**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jill M Steigleman, | No. CV-19-08060-PCT-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Symetra Life Insurance Company, | |
| Defendant. | |

Plaintiff Jill Steigleman seeks summary judgment that ERISA does not preempt her state law claims for breach of contract and bad faith. Defendant Symetra Life Insurance Company seeks summary judgment that ERISA does preempt those claims. The Ninth Circuit concluded there was a question of fact on this issue and, after additional discovery, the parties' second round of summary judgment motions do not alter that conclusion. Therefore, the Court will set a bench trial on the applicability of ERISA.

## BACKGROUND

Steigleman owned and operated an insurance agency. Over the years, that agency had between one and four employees. During their employment, the agency's "employees gained access to group-type disability insurance coverage through Steigleman's membership in The Agents Association (TAA)." *Steigleman v. Symetra Life Ins. Co.*, No. 21-15613, 2022 WL 912255, at *1 (9th Cir. Mar. 29, 2022). The agency paid 100% of its employees' premiums for disability coverage, as well as 100% of the employees' premiums

for other benefits obtained through TAA, such as vision insurance.[1]

During her deposition, Steigleman was asked if she offered "disability coverage for people in your office."  She responded "Well, I just let them apply for anything [TAA] offered if they worked enough hours.  They had to work at least 32 hours a week for me, and they had to be there six months."  Steigleman then stated paying the employees' premiums was "part of their benefit package that I would sell so I could hire qualified people."  (Doc. 131-12 at 73-74).  If it existed, the requirement that an employee work 32 hours a week was unique in that "TAA required that staff be employed for six months and work only 20 hours per week" to be eligible for benefits.[2]  *Steigleman v. Symetra Life Ins. Co.*, No. 21-15613, 2022 WL 912255, at *1 (9th Cir. Mar. 29, 2022).

This Court previously concluded ERISA applied to the disability coverage and preempted Steigleman's state-law claims.  The Ninth Circuit reversed, concluding it was unclear whether Steigleman's agency had established an ERISA plan.  The Ninth Circuit held, in relevant part, "there is a genuine issue of material fact as to whether Steigleman imposed her own separate requirements" for the agency's employees to obtain benefits or whether Steigleman "merely described TAA's eligibility rules incorrectly at her deposition." *Steigleman*, 2022 WL 912255, at *1.  On remand, the Court allowed the parties to conduct additional discovery and "file motions for summary judgment regarding the applicability of ERISA or a statement that a bench trial on this issue is necessary."  (Doc. 171 at 2).  Both sides opted to file motions for summary judgment.

Steigleman's motion argues there is no longer any dispute of fact and ERISA does not apply.  That position is supported by her own declaration as well as declarations from two previous employees.  In her declaration Steigleman states, "I did not create or impose any eligibility criteria on the offer to pay my staff's TAA premiums."  (Doc. 180-1 at 95).

---

[1] This is referring to benefits through TAA.  The agency paid some, but not all, of the employees' health insurance premiums.

[2] Steigleman had testified earlier in her deposition "You had to be there six months before you could offer any kind of benefits to a staff member, and it was optional.  Most agents really don't provide it.  I just felt like you can't sell insurance and then not take care of your staff."  (Doc. 131-12 at 49-50).  This testimony could be read as showing Steigleman viewed her agency, not TAA, as the entity that was offering benefits.  If so, that might be additional evidence that the agency established an ERISA plan.

She explains her deposition statement that an employee had to work 32 hours "was not meant to suggest" she had different requirements from TAA.  (Doc. 180-1 at 96).  Rather, Steigleman claims she was "attempting to describe the eligibility criteria that *all* TAA members' staff had to satisfy."  (Doc. 180-1 at 96).

The first declaration from a former employee states "Ms. Steigleman did not create or impose any sort of eligibility criteria on the payment of my premiums."  (Doc. 180-1 at 84).  And the second declaration from a former employee is similar, stating "[n]either Ms. Steigleman nor her agency had any sort of criteria or eligibility requirements with respect to the TAA insurance and the offer to fund the cost of premiums."  (Doc. 180-1 at 88).  Those declarations recognize, however, that payment of the premiums was premised on their continued employment in that they describe payment of premiums as a "benefit of employment" at the agency.  (Doc. 180-1 at 84).

The declarations from the two employees do not state how many hours each employee worked.  But Steigleman submitted two employee benefit enrollment forms.  Those forms indicate that, as of 2009, one employee applying for benefits worked 25 hours per week while the other worked 30 hours per week.  (Doc. 180-1 at 112-13).  Steigleman argues these forms are additional evidence she misspoke at her deposition and the only requirement for benefits was the 20 hours per week imposed by TAA.

In opposing Steigleman's motion for summary judgment, Symetra argues Steigleman is not entitled to change her deposition testimony.  According to Symetra, there was never any indication Steigleman believed her deposition testimony was inaccurate until her reply brief at the Ninth Circuit.  Symetra also argues "the timing and context of Plaintiff's declaration suggest that it is a sham."  (Doc. 185 at 9).  In effect, now that she knows separate eligibility criteria would be fatal to her case, Symetra argues Steigleman has changed her testimony.  But in any event, Symetra also argues Steigleman's deposition testimony regarding the unique eligibility requirement (*i.e.*, 32 hours per week) is not crucial to defeating summary judgment.  Symetra argues the other circumstances surrounding the agency's offering of benefits and payment of premiums establish

Steigleman is not entitled to summary judgment.

The summary judgment motion from Symetra, as well as Steigleman's opposition, contain most of the same arguments briefed in connection with Steigleman's motion. Symetra's motion makes clear, however, the sole issue regarding the applicability of ERISA is "whether the Steigleman Insurance Agency had established or maintained an employee welfare benefit plan." Thus, unlike previously when Symetra argued some other entity may have established an ERISA plan, the only inquiry now is whether Steigleman's agency created an ERISA plan. In connection with its motion, Symetra also points out Steigleman's agency deducted on its tax returns the premiums paid to TAA on its employees' behalf. The agency identified those premiums as contributions to an "Employee benefit program." (Doc. 179-6 at 9). Steigleman's deposition testimony, the agency's tax returns, and the remaining circumstances all show, according to Symetra, that ERISA applies.

## ANALYSIS

## I.    Motion to Enforce Scheduling Order and Protective Order

On the last day of the post-remand discovery period, Steigleman filed a "Motion to Enforce Court's Scheduling Order or, in the Alternative, For Protective Order." (Doc. 173). That motion was procedurally improper and is based on a misunderstanding of Federal Rule of Civil Procedure 45. Therefore, the motion will be denied.

On June 16, 2022, the Court granted the parties "a brief time to conduct additional discovery" regarding "the applicability of ERISA" to Steigleman's claims. (Doc. 171 at 2). The parties were ordered to complete that discovery no later than July 29, 2022. (Doc. 171 at 2). Shortly after discovery began, Symetra contacted non-party Blue Cross Blue Shield ("BCBS") seeking the production of documents. Symetra and BCBS conferred for a few weeks and BCBS eventually stated a subpoena would be necessary. On July 25, 2022, Symetra sent BCBS a subpoena for the documents. That subpoena had a compliance date of August 8, 2022, after the close of discovery. However, Symetra informally asked BCBS to produce the documents no later than the discovery deadline of July 29, 2022.

BCBS produced the documents on July 29, 2022.  Symetra informed Steigleman the same day that it would not use the BCBS documents except for "impeachment purposes."  (Doc. 173-3 at 2).

Despite knowing the documents had been produced by BCBS on July 29, 2022, Steigleman filed a motion requesting the Court prohibit Symetra from using "any documents or information obtained" from the BCBS subpoena.  (Doc. 173-4).  Symetra responded the motion was improper under the Court's discovery dispute procedures. Symetra also argued the motion was unnecessary given the documents had been received by July 29, 2022, and, in any event, Symetra did not plan on using the documents.  Symetra requested an award of the fees and expenses it incurred in responding to Steigleman's motion.

Steigleman's motion suffers from at least three fatal flaws.  First, the Court's discovery dispute procedures state if the parties cannot resolve a discovery dispute, "do not file a motion unless directed by the Court."[3]  Steigleman argues her motion "is not a discovery motion, but rather a motion made in response to defendants' alleged non-compliance with [the Court's scheduling] order."  (Doc. 178 at 4).  In support of this position, Steigleman cites an unpublished order from a state court in New York as well as a decision by the Supreme Court of New Jersey.  The Court is not familiar with the discovery dispute rules that apply in those courts.  Therefore, they do not provide guidance for the present situation.

Based on the Court's procedures, and the content of Steigleman's motion, it is difficult to believe her counsel believes a motion that is identified, in part, as a request for a "protective order" does not qualify as a discovery dispute.  Seeking a protective order is a prototypical type of discovery dispute subject to the Court's discovery dispute procedures, particularly when the protective order is sought in part based on the alleged failure to comply with discovery deadlines.  Thus, the motion was procedurally improper and could be denied on that basis alone.

---

[3] The Scheduling Order issued on June 4, 2019, stated "[t]he parties shall not file written discovery motions without leave of Court."  (Doc. 16 at 4).

The second flaw in Steigleman's motion is that it is based on an erroneous view of how Rule 45 works.  According to Steigleman, a subpoena pursuant to Rule 45 is subject to a "14-day minimum" response time.  (Doc. 173 at 6-7).  Steigleman believes a Rule 45 subpoena issued on July 25, 2022, could not have a response date of less than fourteen days thereafter.  And because the discovery period was set to end on July 29, Steigleman argues the subpoena was facially improper.  Steigleman does not identify the portion of Rule 45 she believes imposes a 14-day minimum period and it is well-established that no such minimum exists.[4]  In fact, the text of Rule 45 states objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).  Thus, Rule 45 explicitly contemplates a subpoena may have a response deadline of less than 14 days.  Because there is no 14-day minimum response period, the subpoena issued on July 25, 2022, was not necessarily improper.  The subpoena did have a response date beyond the close of discovery, but Steigleman has not explained why that response date, on its own, rendered the subpoena improper.

The third flaw in Steigleman's motion is that BCBS produced the documents by the discovery deadline of July 29, 2022.  Before even filing her motion Steigleman knew the documents had been produced by the discovery deadline.  Given that the documents were produced within the discovery deadline, it is not clear why Steigleman believes there is any remaining issue.  If Symetra had sent the Rule 45 subpoena to BCBS six weeks earlier, but specified July 29, 2022, as the compliance date, Steigleman's timeliness objection would have little basis.  If BCBS had not produced the documents by the discovery deadline, the analysis might be different.   But given the production by the discovery deadline, Steigleman's motion lacks a sufficient basis and will be denied.[5]

---

[4] Steigleman cites the 1991 Advisory Committee Notes.  Those notes discuss a provision that is not in the current version of Rule 45.
[5] Symetra requested sanctions pursuant to Rule 37(a)(5)(B).  That rule, applicable to the present situation through Rule 26(c), allows for an award of "reasonable expenses" when a motion for a protective order is denied, unless the motion was "substantially justified" or other circumstances would render an award of expenses unjust.  Steigleman's motion was not substantially justified.  However, there may be other circumstances that would make it unjust to award expenses to Symetra.  Because it is likely the prevailing party will seek an award of fees after final judgment, the Court will deny the present request for an award of expenses.  However, if Symetra prevails, it may seek the fees associated with this motion

## II.    Summary Judgment Motions

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988).  It is Symetra's burden to establish "the existence of an ERISA plan."  *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 n.2 (9th Cir. 1998).

The Ninth Circuit held "Steigleman's employees gained access to group-type disability insurance coverage through Steigleman's membership in [TAA], and Steigleman's insurance agency paid the employees' premiums."  *Steigleman v. Symetra Life Ins. Co.*, No. 21-15613, 2022 WL 912255, at *1 (9th Cir. Mar. 29, 2022).  These facts were "evidence that Steigleman may have 'established or maintained' an ERISA plan," but the Ninth Circuit concluded they were "not sufficient" to do so.[6]  *Id.*  The Ninth Circuit then concluded there was a dispute of fact whether Steigleman imposed different eligibility criteria on her employees than what was required by TAA.

Steigleman argues the Ninth Circuit's decision requires the Court address the eligibility criteria dispute created by her deposition testimony and nothing else.  (Doc. 186 at 8).  Steigleman invokes "the law of the case" and "the rule of mandate" as requiring this limitation.  But neither of those doctrines applies here.

The Ninth Circuit did not decide "explicitly or by necessary implication" that the only possible factual dispute remaining was the eligibility criteria addressed during

at that time, as well as any other fees or expenses, as appropriate.  And if Steigleman prevails, she should not seek any expenses associated with her needless motion and Symetra may be entitled to a reduction of any expenses payable to Steigleman based on the expenses Symetra incurred in connection with this motion.

[6] The Ninth Circuit's decision in this case stated "the 'bare purchase of insurance . . . does not by itself constitute an ERISA plan.'" (quoting *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988)).  The ellipses eliminated a crucial aspect of the statement in *Kanne*.  The full statement in *Kanne* was "the bare purchase of insurance, without any of the above elements present, does not by itself constitute an ERISA plan (although it may be evidence of the existence of an ERISA plan)."  *Id.*  The "above elements" referenced include "no contributions are made by an employer" to the group-type insurance program at issue.  *Id.*  Thus, the full quote in *Kanne* does not address the situation here.  In fact, the full quote would appear to weigh against Steigleman's position in that this case does not involve "the bare purchase of insurance."  Rather, the undisputed facts are the agency paid 100% of the premiums for multiple types of insurance to cover its employees and that coverage was dependent on continued employment.

Steigleman's deposition. Thus, the law of the case doctrine does not apply. *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019). And "the rule of mandate allows a lower court to decide anything not foreclosed by the mandate." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). Deciding the applicability of ERISA based on Steigleman's deposition testimony, as well as all the other "surrounding facts and circumstances," was not foreclosed by the Ninth Circuit's decision. *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988).

Instead of any formal limitation on the arguments that may be presented, this case is subject to the usual rule that "a defendant need not raise every possible argument in a motion for summary judgment and may make a different argument on remand if a grant of summary judgment in its favor is reversed on appeal." *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019). Therefore, the Court must evaluate the entire record.

Starting with the parties' eligibility criteria dispute based on Steigleman's deposition, "[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting [her] prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). That rule does not apply here because the Ninth Circuit remanded for this Court to consider whether Steigleman "merely described TAA's eligibility rules incorrectly at her deposition." Those instructions implicitly require the Court consider Steigleman's deposition testimony as well as contradictory evidence, including a new declaration by Steigleman. Therefore, the sham affidavit rule does not prevent consideration of Steigleman's recent declaration.

Steigleman argues the inconsistency between her deposition and declaration do not create a dispute of fact because there is only one possible way to read her deposition testimony. She believes it is obvious she merely misspoke during her deposition. In support, Steigleman points to Judge Watford's observation during oral argument that it was "crystal clear . . . that Steigleman was not trying to say that she had come up with her own independent minimum eligibility requirements, she was . . . just trying to repeat to the best of her recollection what the Plan's eligibility requirements were." (Doc. 186 at 9.) But a

statement by one panel member during oral argument does not control over the panel's written decision. And the panel's decision does not state it is "crystal clear" there is only one possible interpretation of her deposition testimony. Rather, the panel stated there is a dispute of fact on this exact point. Steigleman does not explain why the panel remanded for further proceedings on the applicability of ERISA if, as she claims, the correct result was obvious.

For purposes of resolving Steigleman's motion, the Court must view the record in the light most favorable to Symetra. So viewed, Steigleman's new declaration does not eliminate the dispute of fact regarding the imposition of different eligibility criteria. Steigleman's deposition testimony was offered at a time when Steigleman likely was unaware that imposing unique eligibility requirements might mean her claims were preempted. Her recent declaration, in contrast, made after understanding the importance of disclaiming unique eligibility criteria certainly must be viewed with some skepticism. Because the Court cannot make credibility determinations at summary judgment, the Court cannot determine which testimony from Steigleman to believe and which not to believe based solely on the record. A bench trial is necessary.

Beyond deciding which testimony by Steigleman should be accepted, there are other aspects of the eligibility criteria dispute that can only be explored at trial. Those aspects include the number of hours the agency's employees worked. The employee enrollment forms indicate that as of 2009, the employees were not working 32 hours per week. But Symetra argues that does not establish how many hours the employees were working as of the relevant time in 2017. If, as of 2017, the agency was requiring its employees to work over 32 hours per week, there may not have been any reason for Steigleman to inform them of the hour limitation on their benefits. A full exploration of the employees' knowledge and practices can only be conducted at trial.

Also related to the eligibility criteria dispute is the question of what benefits the agency offered to pay for on its employees' behalf. According to Steigleman's deposition, the agency offered its employees vision, dental, short-term disability, long term disability,

health insurance, vacation, and holiday pay.  (Doc. 131-12 at 48-49).  But according to documents from TAA, the agency's employees were eligible for all of the benefits identified by Steigleman but also excess disability insurance, life insurance, long term care insurance, critical illness insurance, accident insurance, and telehealth.  (Doc. 131-11 at 197).  According to Steigleman, her agency agreed to pay for any benefit the employees selected.  Yet the present record shows the employees only selected a small subset of the available benefits.  There may be an explanation for the employees foregoing additional insurance coverage at no cost to themselves, but Steigleman has not provided such an explanation.  Symetra argues the limited selection of benefits by the employees is yet more evidence that Steigleman designed a unique "benefits package" for the agency's employees.  Symetra also points to the agency's claimed tax deduction for "Employee benefits program" as more evidence Steigleman intended to create her own benefits program.

Based on the present record, the deposition testimony showing an increased hour requirement, the evidence that Steigleman viewed her agency as offering a "benefits package," the evidence the agency reported "benefits program" payments on its tax return, and the evidence indicating Steigleman selected which benefits to offer, create a dispute of fact whether ERISA applies.  If the agency had a unique hour requirement, intended to offer a unique "benefits package," only offered to pay for some of the benefits, and paid the entirety of the employees' premiums, it will be difficult to conclude ERISA does not apply.[7]

Because there are many factual disputes regarding how benefits were provided to the agency's employees, a trial is necessary.  The Court acknowledges, however, the burden of proving the existence of an ERISA plan is on Symetra, not Steigleman.  The Ninth Circuit has already ruled the employees' access to benefits through Steigleman and the agency's payment of all their premiums was not enough.  Thus, the burden is on

---

[7] Steigleman makes additional arguments for why ERISA could not apply, regardless of her imposing a unique hour requirement.  Those arguments need only be addressed after the Court complies with the Ninth Circuit's instruction to resolve the factual disputes regarding any eligibility criteria.

Symetra to prove Steigleman imposed a unique hour requirement, the employees were only offered a subset of TAA's benefits, or other facts proving the agency "established or maintained" a plan.

A bench trial is necessary to determine the applicability of ERISA.  If ERISA is found not to apply, the Court will schedule a jury trial on Steigleman's state-law claims. In advance of the bench trial, the parties will be required to file a Joint Proposed Pretrial Order in the form outlined on the Court's website with the exception the parties need not submit their proposed findings of fact and conclusions of law prior to the bench trial.  In preparing the Joint Proposed Pretrial Order, the parties must address the following in Section I regarding "Issues of Law in Controversy":

- In her summary judgment briefing Steigleman argues it has been "well-established . . . for decades" that an employer directly paying the entirety of its employees' insurance premiums is not sufficient for the employer to be deemed to have established an ERISA plan.  (Doc. 180 at 18).  Steigleman has never offered any caselaw establishing this proposition.  Given that this proposition allegedly has been well-established for decades, Steigleman must set forth the case citations addressing situations where a court found an ERISA plan did *not* exist despite the employer directly paying its employees' insurance premiums.[8]  Symetra should address the case citations provided by Steigleman.

---

[8] Steigleman often cites a First Circuit case for its statement "[a] mere purchase of insurance by an employer is not sufficient to establish a plan under ERISA." *New England Mut. Life Ins. Co. v. Baig*, 166 F.3d 1, 4 (1st Cir. 1999).  But that case involved a doctor who purchased an individual disability policy.  The doctor's employer reimbursed him for the premiums he paid but those premiums were "never channeled" through the employer. *Id.* at 3.  And the doctor's coverage "would not terminate if his employment" ended.  *Id.* at 2.  Those facts bear no resemblance to the facts here.  Moreover, the remainder of the First Circuit's analysis in that case appears to run counter to Steigleman's current position.  The First Circuit noted an employer's "purchase of [an] insurance policy constituted an express intention by the employer to provide benefits on a regular and long term basis."  *Id.* at 5. That intention to provide regular and long term benefits was a "crucial factor" for determining if a plan existed.  Here, it is undisputed Steigleman intended to provide a "benefits package" to the agency's employees and the agency did so for years.  Therefore, Steigleman may cite the First Circuit opinion, but she should provide the other cases she is relying upon to derive her general rule.

- The parties must identify opinions, preferably by the Ninth Circuit, where the alleged plan did not meet the safe harbor regulation, 29 C.F.R. § 2510.3-1(j), but the court found the alleged plan was not an ERISA plan.  The Court is aware that failure to meet one of the provisions of the safe harbor "is not conclusive."  *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1121 (9th Cir. 1998).  However, it will be helpful to consider those situations where an employer could not take advantage of the safe harbor based on its actions, but a court still determined the employer had not established an ERISA plan.  The Court is particularly interested in any case where there is discussion of the safe harbor regulation in the context of an employer directly paying premiums, but the court found no ERISA plan existed.

Accordingly,

**IT IS ORDERED** the Motion to Enforce (Doc. 173) is **DENIED**.

**IT IS FURTHER ORDERED** Motions for Summary Judgment (Doc. 179, 180) are **DENIED**.

**IT IS FURTHER ORDERED** the parties shall file the Joint Proposed Pretrial Order no later than **February 10, 2023**.  The parties should identify the dates in February and March 2023 they are available for a two-day bench trial.

Dated this 20th day of January, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge

- 12 -